*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
THE COURT EN BANC[1]

_____

**UNITED STATES**
*Appellee*

**v.**

**Sean M. SWISHER**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202100311 (f rev)**

_____

Decided: 29 May 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary
*upon further review following remand from*
*the Court of Appeals for the Armed Forces*

Military Judge:
Eric A. Catto

Sentence adjudged 29 July 2021 by a general court-martial tried at Marine Corps Recruit Depot Parris Island, South Carolina, consisting of officer and enlisted members.[2] Sentence in the Entry of Judgment: reduction to E-1, confinement for 54 months, and a dishonorable discharge.[3]

---

[1] Senior Judge GROSS and Judge GANNON took no part in the consideration or decision of this case.

[2] Appellant elected to be tried by members and sentenced by the military judge.

[3] Appellant was credited with having served eight days of pretrial confinement.

For Appellant:
*Major Joshua Keefe, USMC*

For Appellee:
*Lieutenant Colonel Candace G. White, USMC*
*Lieutenant Lan T. Nguyen, JAGC, USN*
*Lieutenant Commander James. P. Wu Zhu, JAGC USN*
*Lieutenant K. Matthew Parker, JAGC, USN*

Senior Judge KISOR delivered the *en banc* opinion of the Court, in which Chief Judge DALY, Chief Judge Emeritus HOLIFIELD, Senior Judge KIRKBY, and Judges HARRELL and de GROOT joined.

————————————

THE COURT EN BANC

*This unpublished opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2*

————————————

KISOR, Senior Judge:

This case is before us upon remand from the Court of Appeals for the Armed Forces (CAAF), which affirmed our *en banc* decision setting aside the finding of guilty to Charge II and affirming the remaining findings, but set aside our decision as to sentence.[4]

# I. BACKGROUND

In the early morning hours of 1 December 2019, security guards at an outdoor mall found Ms. Bravo behind a free-standing coffee shop. She was non-responsive, covered in vomit, and two men -- Appellant and Mr. Simmons -- appeared to be sexually assaulting her. Mr. Simmons appeared to be engaging in penile/vaginal penetration, and Appellant appeared to be subjecting her to unwilling oral copulation. Mr. Simmons ultimately pleaded guilty in state

---

[4] *United States v. Swisher*, 85 M.J. 1 (C.A.A.F. 2024).

court to criminal sexual conduct in the third degree, and testified against Appellant at his general court-martial. The South Carolina state court sentenced him to a five-year suspended sentence and probation for three years.[5]

On appeal, we initially affirmed the findings and sentence.[6] However, we subsequently granted Appellant's motion for *en banc* reconsideration and withdrew our prior decision.[7] Upon *en banc* review, we set aside and dismissed with prejudice the attempted sexual assault specification for failure to state an offense, affirmed the remaining findings, and affirmed the sentence after reassessment.[8] The CAAF granted review to determine whether we abused our discretion when performing our sentence appropriateness review under Article 66(d)(1), UCMJ.[9] The CAAF held that we abused our discretion in declining to consider whether Appellant's case was closely related to Mr. Simmons' case. The CAAF affirmed our decision as to the findings but set aside our decision as to the sentence.[10]

We again affirm the sentence.

## II. DISCUSSION

**The CAAF remanded this case to us for a new sentence appropriateness review in light of its opinion. We are to re-examine whether the sentence awarded by the military judge was either inappropriately severe or disparate from that awarded to Mr. Simmons by a South Carolina state court for the same criminal occurrence.**

### A. Standards of Review:

We review sentence appropriateness de novo.[11] We may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as we find correct in law and fact and determine, on the basis of the entire record,

---

[5] *Id.* at 3.

[6] *United States v. Swisher*, No. 202100311, 2023 CCA LEXIS 339, at *2 (N-M. Ct. Crim. App. Aug. 16, 2023) (*en banc*) (unpublished).

[7] *Id. at* *3.

[8] *Id.* at *26-27.

[9] *Swisher*, 85 M.J. at 2.

[10] *Id.* at 5.

[11] *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005).

should be approved.[12] This language empowers the Courts of Criminal Appeals (CCA) to review cases for sentence appropriateness.[13] Our power to review a case for sentence appropriateness includes (but is not limited to) considerations of uniformity and even-handedness of sentencing decisions.[14] We have the necessary discretion to consider and compare other sentences when we review a case for sentence appropriateness and relative uniformity.[15] Generally speaking, neither Article 66, UCMJ, nor caselaw requires us to engage in sentence comparison with specific cases.[16] However, this general rule is subject to one exception: we are required to engage in sentence comparison in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.[17]

It is in this context that the CAAF has spelled out the analytical approach we must employ when confronted with a claim that the sentences in two cases are disparate. An appellant bears the burden of demonstrating that any referenced cases are "closely related" to his or her case and that the sentences are "highly disparate." If the appellant meets that burden (or if the court raises the issue *sua sponte*), then the Government must show that there is a rational basis for the disparity.[18]

### B. Analysis

1. <u>The cases are closely related.</u>

As the CAAF has stated in this case, we are required to begin our analysis with whether Appellant has borne the burden of showing that his case and another case are closely related.[19] The CAAF also stated that the mere fact that the sentence in Appellant's case was the product of a court-martial proceeding and the sentence in Mr. Simmons' case was the product of a civilian criminal proceeding is not necessarily dispositive of the issue of whether the

---

[12] 10 U.S.C. § 866(d)(1) (2018).

[13] *See United Sates v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001).

[14] *See id*. This is one of the statutory powers conferred upon the service courts of criminal appeals.

[15] *See United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001).

[16] *See United States v. Behunin*, 83 M.J. 158, 161-62 (C.A.A.F. 2023); *see also United States v. Noble,* 50 M.J. 293, 294 (C.A.A.F. 1999).

[17] *Id*. at 162 (quoting *Sothen*, 54 M.J. at 296).

[18] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

[19] *Swisher*, 85 M.J. at 4.

two cases are "closely related." The CAAF has made it clear that civilian sentences may serve as a basis for sentence comparison.[20] And, when a CCA confronts the issue of whether the sentence in a court-martial case is inappropriate in the light of a sentence imposed in a civilian case, that court *must* conduct an initial assessment of whether the cases are closely related.[21] Therefore, in light of the CAAF's opinion in this case, we conclude that Appellant's and Mr. Simmons' cases, although adjudicated by different sovereigns, are closely related because they were co-actors involved in a common crime.[22]

### 2. The sentences are highly disparate.

The Government contends that the two sentences are not highly disparate.[23] We disagree. We observe that a five-year suspended sentence resulting in little actual jail time served, and a sentence including 54 months' unsuspended confinement are, in reality, highly disparate.[24] But we also observe that because of the separate and distinct punitive systems, each includes a punishment that the other does not. Appellant was sentenced to a dishonorable discharge and reduction to paygrade E-1, while Mr. Simmons' sentence included three years of probation, under the probation terms of the South Carolina court system.[25]

### 3. There is a rational basis for the disparity.

The Government also contends that there is a rational basis for any disparity.[26] We agree. We recognize that South Carolina is a separate sovereign and the Government in this case may be hard-pressed to explain the reasoning behind the South Carolina prosecutor's decision to negotiate this particular plea bargain with Mr. Simmons. Nonetheless, the Government correctly points out

---

[20] *Sothen*, 54 M.J. at 296-97 (stating that nothing precludes consideration of cases involving military and civilian co-actors).

[21] *Swisher*, 85 M.J. at 5.

[22] The CAAF stated that it did not evaluate whether or not Appellant's and Mr. Simmons's cases were closely related, but noted that, in remanding the case, it was mindful that cases are closely related if the individuals were co-actors in a common crime. *Swisher*, 85 M.J. at 5 n.7.

[23] Government's Brief at 5.

[24] Mr. Simmons had spent 232 days in detention at the time of his own plea. App. Ex. LIII at 9.

[25] App. Ex. LIII. His probation required random drug and alcohol testing, and that he remain employed.

[26] Government's Brief at 5.

that Mr. Simmons agreed to: (1) plead guilty and (2) testify against Appellant. Additionally, Appellant was convicted of the additional offense of wrongful use of cocaine. Taken together, the Government has shown a rational basis for any disparity in this case.[27]

C. *Appellant's sentence is not inappropriately severe.*

We are also unmoved by Appellant's argument the military judge's sentence is too harsh. Due to the egregious nature of Appellant's crimes, the military judge's awarding of 54 months' confinement, reduction to E-1, and a dishonorable discharge was appropriate.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we **AFFIRM** the sentence in the Entry of Judgment.[28]

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[27] *See Sothen,* 54 M.J. at 296.

[28] Articles 59 and 66, UCMJ.